# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| **HEATHER GREGORY,** | * |
| | * |
| **Plaintiff,** | * |
| | *   Civil No. TMD 16-3251 |
| v. | * |
| | * |
| | * |
| **NANCY A. BERRYHILL,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| **Defendant.**[1] | * |
| | *********** |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## <u>ALTERNATIVE MOTION FOR REMAND</u>

Plaintiff Heather Gregory seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 18) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 18) is **GRANTED**.

I

**Background**

Plaintiff was born in 1975, has a high-school education, and previously worked as a veterinarian technician. R. at 29. Plaintiff protectively filed applications for DIB and for SSI on September 13, 2012, alleging disability beginning on August 10, 2006 (later amended to February 1, 2012), due to bipolar disorder, carpal tunnel syndrome, depression, panic attacks, migraine headaches, neck injury, back injury, and left ankle injury. R. at 16, 199-207, 224, 236. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 66-130, 133-43. On February 2, 2015, ALJ Jennifer M. Long held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 37-65. On April 16, 2015, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of February 1, 2012, through the date of the decision. R. at 13-36. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on July 26, 2016. R. at 1-4, 12. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On September 26, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. After the parties consented, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was

reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A. **State Agency Medical Consultants**

On January 22, 2013, a state agency medical consultant, Ann L. Williams, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 71-74, 83-86. Dr. Williams opined that Plaintiff could (1) lift and/or carry ten pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 72, 84. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 72-73, 84-85. Although Plaintiff had no manipulative, visual, or communicative limitations, she was to avoid concentrated exposure to hazards such as machinery and heights. R. at 73, 85. On June 24, 2013, Carl Bancoff, M.D., affirmed Dr. Williams's assessment. R. at 100, 116.

On January 24, 2013, a state agency consultant, Norman Kane, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listing 12.04 relating to affective disorders (R. at 70-71, 82-83). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Dr. Kane opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 70, 82. Dr. Kane did not find evidence

to establish the presence of the criteria under paragraph C of the applicable listing. R. at 70-71, 82-83. Dr. Kane thus assessed Plaintiff's mental RFC and opined that she was moderately limited in her ability to (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) make simple work-related decisions; and to (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 74-75, 86-87. She was markedly limited in her ability to carry out detailed instructions, but otherwise she was not significantly limited. R. at 74-75, 86-87.

On July 16, 2013, another state agency consultant, B. Lee Hudson, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.08. R. at 100-03, 116-19. Dr. Hudson opined that, under paragraph B of the applicable listings, since January 1, 2013, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 100-01, 116-17. Through the date last insured of December 31, 2012, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 102, 118. Dr. Hudson did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 101, 102, 117, 118. Dr. Hudson opined that Plaintiff's mental symptoms were not severely functionally

limiting before her date last insured of December 31, 2012. R. at 103, 119. The consultant assessed Plaintiff's mental RFC since January 1, 2013, and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 104-06, 120-22.

**B.     Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in her decision:

> [Plaintiff] testified that she is unable to work due to migraine headaches that occur every couple of days, leaving her in bed and vomiting, and depression that also makes her stay in bed. She says that for the past 4 or 5 years, she has bad days often when she stays in bed all day, and although she lives with her 5 children, ages 5, 5, 12, 18 and 21, she says her grandmother and older children help take care of the younger ones. She admits she prepares meals for her children, but she says she has no social activities or friends, and she cannot concentrate for more than an hour. Despite her alleged lack of concentration, she also admits watching television throughout the day. She claims she has crying spells, and she takes Prozac, Klonopin and Zyprexa to help her deal with her depression, as well as panic attacks, which she says still occur, [about] once every month or two. [Plaintiff] has a number of suicide attempts in her past and said she was last hospitalized for her mental impairments in January 2015. She says that she suffers from post-traumatic stress disorder following a rape in California in 2009.
>
> [Plaintiff] also testified that she has a herniated disc in her back, as well as carpal tunnel in her bilateral wrists, and she has undergone past surgeries on her left foot, which still aches her when it is cold and wet outside. On a good day, when [Plaintiff] is not suicidal, [Plaintiff] says she gets out of bed and showers and can play on the bed with her children or watch television with them. Despite

her alleged back pain and carpal tunnel syndrome, [Plaintiff] testified that she can lift 40-45 pounds, and she can pick up her 38 pound son.

R. at 22-23; *see* R. at 41-63.

**C.     VE Testimony**

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the unskilled, sedentary jobs of small-parts inserter, grading and sorting worker, or quality-control worker.[3]  R. at 63-64.  A person absent two or more days per month from work would not be employable.  R. at 64-65.

### III

### Summary of ALJ's Decision

On April 16, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of February 1, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a small-parts inserter, grading and sorting worker, or quality-control worker.  R. at 18-30.  The ALJ thus found that she was not disabled from February 1, 2012, through the date of the decision.  R. at 30.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* §§ 404.1568(a), 416.968(a).

6

In so finding, the ALJ found that Plaintiff had (1) mild limitation in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) experienced no episodes of decompensation of extended duration. R. at 21. The ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as she can lift up to ten pounds occasionally, and less than ten pounds frequently, while standing or walking for a combined total of two hours, and sitting for six hours, in an eight-hour work day. [Plaintiff] can never climb ladders, ropes, or scaffolds, and she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Further, she must avoid concentrated exposure to hazards, such as machinery and heights, and she can perform simple, routine and repetitive tasks involving only occasional decision-making and judgment. Finally, [Plaintiff] can perform jobs that involve only occasional changes in the work setting, where interpersonal contact is incidental to work performed, and supervision is simple, direct and concrete, with no interaction with the general public.

R. at 22. The ALJ gave "partial weight" to the opinions of Drs. Kane and Hudson, "to the extent that they are consistent with the cumulative credible evidence of record." R. at 28. The ALJ gave their opinions "less weight," to the extent that they were inconsistent with the ALJ's RFC assessment, because "these non-examining psychologists were unable to consider the longitudinal record through the date of this decision." R. at 28. The ALJ gave "significant weight to the assessments of Drs. Williams and Bancoff, adopting them fully, as they are consistent with the cumulative credible evidence of record." R. at 25.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

8

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ failed to follow the proper procedure for analyzing mental impairments. Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 18-1. She further maintains that the ALJ erroneously assessed her RFC and failed to include in the RFC assessment any limitation on concentration, persistence, or pace. *Id.* at 9-13. She also asserts that the ALJ failed to address the impact of Plaintiff's absenteeism on her ability to perform substantial gainful activity. *Id.* at 13.[5]

---

[5] After filing their motions for summary judgment and before this case was reassigned to the undersigned, the parties declined the Court's invitation (ECF No. 20) to provide supplemental briefing in light of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017).

Social Security Ruling[6] 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Court turns first to Plaintiff's argument that remand is warranted under *Mascio* because the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting her to simple, routine, and repetitive tasks involving only occasional decision-making and judgment. Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 18-1. The Fourth Circuit held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, the ALJ's hypothetical question to the VE and the corresponding RFC assessment limiting Plaintiff to "only occasional decision-making and judgment" that "involve only

13

occasional changes in the works setting" (R. at 22; *see* R. at 63) account for Plaintiff's moderate limitation in concentration, persistence, or pace. *See Willis v. Colvin*, Civil No. TMD 15-2301, 2016 WL 3440126, at *7 (D. Md. June 22, 2016) (citing cases). Plaintiff's argument that remand is warranted in this case under *Mascio* thus is unavailing.

Plaintiff also maintains that the ALJ failed to follow the proper procedure for analyzing mental impairments under 20 C.F.R. §§ 404.1520a and 416.920a. Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 18-1 (citing, *inter alia*, *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662, 659 (4th Cir. 2017); *Simpson v. Colvin*, 121 F. Supp. 3d 31, 38-39 (D.D.C. 2015)). "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four

14

broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson*, 846 F.3d at 659.

Here, at step two, the ALJ found that Plaintiff's bipolar disorder, anxiety disorders, and personality disorders were severe impairments. R. at 18. At step three, the ALJ found that Plaintiff had (1) mild limitation in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) experienced no episodes of decompensation of extended duration. R. at 21. Plaintiff contends that the ALJ "failed to provide adequate explanation to support the degree of functional limitation in the four required broad areas of function" under Finding 5. Pl.'s Mem. Supp. Mot.

Summ. J. 7, ECF No. 18-1. As for Plaintiff's activities of daily living, however, the ALJ found that Plaintiff remained "capable of helping to raise her five children, including three minor children, with some assistance from her grandmother" (R. at 28). *See Pentakota v. Colvin*, No. CA 14-0190-C, 2015 WL 1003605, at *2 (S.D. Ala. Mar. 6, 2015); *Kentch v. Colvin*, No. C12-1890-JLR, 2013 WL 4647617, at *8-9 (W.D. Wash. Aug. 29, 2013). As for Plaintiff's alleged lack of concentration, the ALJ noted that she admitted to watching television throughout the day (R. at 22). *See Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) ("[The claimant] argues that his history of delusions and hallucinations supports a finding of greater limitation. However, he also testified that he had the ability to read, watch television, and play video games. The ALJ found that these activities required a degree of concentration, persistence, or pace. We agree and hold that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace."); *Johnson*, 434 F.3d at 655-56 n.8 ("[The claimant's] testimony that on a regular basis she attends church, reads books, watches television, feeds the family pets, cleans the house, washes clothes, manages her household finances, visits relatives, and performs the stretches recommended by her chiropractor is inconsistent with the assessment because many of these activities require reaching, grasping, pushing, pulling, and concentration.").

Regarding Plaintiff's social functioning, the ALJ found that, on a good day, Plaintiff could play with her children or watch television with them. R. at 23. The ALJ also noted the opinions of the state agency consultants regarding Plaintiff's mild to moderate limitations in the four areas of mental health functioning (R. at 28, 70, 82, 101, 102, 117, 118), which she has not disputed. The ALJ further found that, although she had "experienced drug overdoses and suicide attempts with short periods of hospitalization," Plaintiff had experienced no episodes of

decompensation of extended duration. R. at 21. Unlike the ALJs in *Patterson* and *Simpson*, the ALJ in this case rated Plaintiff's activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, and further discussed in her opinion her reasons for doing so. Plaintiff's argument that the ALJ failed to analyze Plaintiff's functional limitations according to the special technique in 20 C.F.R. §§ 404.1520a and 416.920a thus is unavailing.

Plaintiff asserts, however, that the ALJ failed to address the level of absenteeism that her repeated hospitalizations due to drug overdoses would create and the impact of the absenteeism on her ability to perform substantial gainful activity. Pl.'s Mem. Supp. Mot. Summ. J. 13, ECF No. 18-1. The VE testified that two or more absences from work per month would preclude employment. R. at 64-65. Given the frequency and duration of her hospitalizations (R. at 25-27), "it is unclear from the record how [Plaintiff] would be able to sustain employment, without having excessive absenteeism that would likely result in [her] termination." *Payne v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1015, 2015 WL 412923, at *1 (D. Md. Jan. 29, 2015). Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is appropriate for the ALJ to build an accurate and logical bridge from the evidence to her conclusion. *See Monroe*, 826 F.3d at 189.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 18) is **GRANTED**. Defendant's final decision is

**REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: March 15, 2018                                             /s/
                                                                Thomas M. DiGirolamo
                                                                United States Magistrate Judge